Good morning, gentlemen. May it please the Court, my name is Sherry McCracken and my client, Katherine Barron, is here with me today. Ms. Barron had a contract with the State of Arizona. She had a contract under Arizona law, and the Arizona Supreme Court in Prosca recognized that all employment in Arizona, including public employment, is contractual. Estoppel does lie against the State, as cited in our briefs in Zavala. But Ms. McCracken, if we can just get right down to the nitty-gritty here, Ms. Barron signed a piece of paper indicating that the position she was going into was probationary and that she could be terminated at any time for no cause. Isn't that correct? Yes, and this was decided on a motion to dismiss, so it should not have been considered at all, the contractual part of it. Also, that one-page document, which is SER 36, the bottom of that page, interestingly enough, says, I understand that this document does not add anything to or take away anything from the ADOA personnel rules. In case of a conflict between this document and the ADOA personnel rules, the ADOA personnel rules apply. Therefore, the administrative code and the administrative code declaring that she should have two evaluations and a report to the person making the decision takes precedence. But on a motion to dismiss, it should not have been considered at all. What she signed before should not have been considered at all? Not on a motion to dismiss, Your Honor. Motion to dismiss is based on the pleadings. Well, of course. Okay. And this was not part of the pleadings. Even by the defense? Actually, it may have been in the answer, Your Honor. That's part of the pleadings, isn't it? Yes, Your Honor. The other thing that we are saying here is, is that the State should be stopped from denying that there was a contract in this particular circumstance. Ms. Barron, unlike many people we've heard about here today, is a single mother with two children and a blind mother who moved across country in reliances on promises by Director Kyle that she would have a permanent job, that she would be co-director with Mr. Peterson, and that she would succeed or be groomed for Mr. Peterson's position. She certainly relied on the Arizona Administrative Code, and in Arizona that right to rely is more evident than it might be in other situations. Again, in this particular case, it's a pleading case. Is there any allegation in your pleading that Ms. Barron's read the Arizona regulations before she signed that contract? Your Honor, I believe that what we pled was that the regulations were part of the contract. Okay. But not that she read them. She wasn't familiar with them. Right. Anyway, as far as the contract, if I can redirect the Court, the Arizona Administrative Code is part of the contract, as is the Arizona Employment Protection Act and the policies and procedures of the State of Arizona of the Historical Society, i.e., no one at the Arizona Historical Society ever didn't make it through their probationary time period. But what's the relevance to that, to this particular case? Suppose it is a case that 100 other employees had gone through and had always gotten through their probationary period, but in this instance this employee had not. What's the relevance that many others had gotten through or many others had not gotten through? How would that be relevant to this case? Actually, it's relevant in two ways, Your Honor. One, it's relevant for the reasonableness of the reliance that she really is going to have a permanent job. It's also relevant, Your Honor, as to the similarly situated analysis in the Title VII matter. But if you sign the agreement that says you're a probationary employee and you can be terminated without cause, how can you then reasonably rely that, well, others, most other people or many other people who have gone through probationary status made it successfully? Well, first of all, it's not an agreement. What it says is an employment information on its face. And secondly, the State of Arizona says that there are no contracts. Is there anything in your pleading that says that Ms. Barron knew that no one had ever failed to be employed who had gone through a probationary period? No. Okay. I don't believe so. But the other thing, back to the Arizona Administrative Code, it required at that time two evaluations at specific periods during the probationary period and a report to the person who could, quote, make the decision. But furthermore, the Arizona Administrative Code demanded that there be a negative decision. If Ms. Woosley had done nothing, if there had been no evaluations, if they had breached their contract and they had done nothing, Ms. Barron would have become a permanent employee less than a week after she was terminated. The State of Arizona relies on private cases, private sector cases, to say that there is no contract in employment in the State of Arizona and forgets that the Employment Protection Act excludes public employees from the no-contract provision. Nothing in this paragraph shall be construed to affect the rights of public employees under the Constitution of the State and state and local laws of the state. The applicable language for public employees is further found at 3D as in Daubert. It says, starting at 3D, an employee has a claim against an employer for termination of employment only if one or more of the following. And 3D says, in the case of a public employee, if the public employee has a right to continued employment under the U.S. Constitution, the Arizona Constitution, the Arizona revised statutes, applicable regulations, policy, practice, or contract of the state. But doesn't that assume, at least I understand your point to mean that you're assuming that she had a right to continued employment, right? That's the predicate of your position. Well, I guess I'm not assuming it. I'm saying that we had a right to present evidence for the implied contract. Oh, right. Right. No, certainly that's the case. But in order for Arizona revised statute 23105 3D, which you just quoted from, to be of any benefit to you, you have to assume that your client had a right to continued employment, right? Okay. And what I'm saying in that effect is that the law in the state of Arizona for which public employees are excluded from the Employment Protection Act is that implied contracts, even in employment, could be enforced, were enforced. And the cases are Leekvold, City of Globe, Wagon Seller, which are all cited, I believe, in my brief. And that the Supreme Court of Arizona, even when faced with, quote, trying to overturn that law in the private sector with private employees, has always refused to do so and has, in fact, said that the language and the premise of Wagon Seller is not affected by these decisions. And that's in Cronin and in Logan. The state says it can fire for no cause, but if you read its administrative regulations, it actually says the agency head can decide that he or she no longer needs the services of the probationary employee. That has to be read with a sensible meaning with all of the other administrative codes and with the EPA. Certainly, if there had not been negative action taken, Ms. Barron would have continued to be employed. One of the things that we point out here is, is that the State wishes to use some of the administrative code and enforce it, and yet ignores it completely in other instances. The district court should not have dismissed Ms. Barron's wrongful termination claim, and certainly not without granting leave to amend, which was asked for. The basis for the dismissal was the EPA. Under the EPA, as I've just argued, these claims still exist for public employees, as found in the cases cited. The district court also erred in granting summary judgment against Ms. Barron in her Title VII and her Equal Pay Act claims. Ms. McCracken, you had asked us to remind you of the five minutes. If you want to hold that good thought and come back and finish after the State has made its presentation. Thank you, Your Honor. Thank you. And I believe now we're going to hear from Rebecca Herbst, please. Good morning. May it please the Court. My name is Rebecca Herbst, and I'm here on behalf of the State of Arizona and the Arizona Historical Society defendants. This case was decided on a straight legal issue. In order to prove a wrongful termination, Ms. Barron had to show that she had a contract for or a continued right to employment with the State. She had neither. She knew that she would have a six-month probationary period in which the Arizona Historical Society could fire her for any reason or no reason. It didn't have to have a reason. She was lawfully terminated. In her complaint in paragraphs 16 and 20, Ms. Barron admitted that she was an original probationary employee with a six-month probationary period, and she was terminated during that time. So whether this was decided on a motion to dismiss or a motion for summary judgment, the analysis is really the same. You can look at it as a motion to dismiss and look at her complaint in which she admits she was a probationary employee. If the Court considers, as the district court considered, there were other documents attached to that motion to dismiss, the analysis perhaps should have been one as a motion for summary judgment. But it doesn't change the analysis, because what this Court looks at is the undisputed facts and the law as applied to those undisputed facts. Well, now, Ms. Barron contends that although what you say is true, that she had signed this probationary contract, that the defendants here would be stopped from taking the benefit of that because representations had been made to her that if she would come and work for them, she would be promoted at the end of a certain time and she'd become the permanent this or that. And in reliance on that, she quit her other job, left, moved to Arizona and accepted the position. Now, can the probationary period be affected by an agreement by estoppel? It cannot, Your Honor. It cannot. It cannot. Promissory estoppel cannot lie against the State of Arizona unless the promise is formalized in writing. And that's a case long versus the city of Glendale that's cited too in our briefs, that to have promissory estoppel against the State, first of all, it has to be in writing. Second of all, she would have to show reasonable reliance on any oral promises from any other employees. And there is significant case law in Arizona that she cannot show reasonable reliance when she has signed a document to the contrary. You can't argue both sides. When you've signed a document indicating that you know you are a probationary employee, she does not have reasonable reliance.  I mean, was she told that she would become the permanent employee? What was she told? What was the representation made to her? Because this was decided on a motion to dismiss, that's not part of the record, what she was told, I believe what she has alleged is that she was given some assurances that as other persons retired, she might be moved into those jobs. But because this was decided on a motion to dismiss, I don't believe it's in the record as to exactly what she was told. What is in the record, and what we do know, though, is that she was never promised anything in writing. So under Arizona law, she cannot argue promissory estoppel against the state because she doesn't have anything in writing. There's also her argument. What's the case law on that, that there can be no promissory estoppel if there's something not, if it's not in writing? It's Long v. The City of Glendale. And I don't have the citation in my notes, but it is cited to in our briefs. It also, though, I think this is a good analysis of why the Arizona legislature enacted the Employment Protection Act. The legislature wanted to avoid, he said, she said, oral promises in terms of employment contracts. And what the legislature said was, yes, all employment is presumed to be contractual, but what that means is everything is presumed to be at will, unless the employee can show in one of three ways that the employment was not at will. So the employee would either have to show a contract in writing for a specified duration of time to have employment, a collective bargaining agreement. We have neither of those cases here. Or in the case of a public employee, which Ms. Barron was, she would have to show the right to continued employment. And that is where her case fails in this situation because she didn't have a right to continued employment because she was terminated from her original probationary status. Now, Ms. McCracken says that the defendants or the State cannot take advantage of the fact that she signed this document because it fails to give the two evaluations and reviews that were required by the administrative statute. What do you say to that? Your Honor, the evaluations, you know, the historical society has not disputed that the evaluations were not done, but it's really not relevant to the issue of whether she had a right to continued employment. Mr. Peterson did not do the evaluations from any probationary employees, male or female, so there was no gender dispute here. The State could have given her absolutely glowing performance evaluations, could have given her top marks in every single category and still decided six days before the end of her probation that it wanted to terminate her for any reason or no reason. The State could have given her poor performance evaluations. I mean, any number of things could have happened, but the district court correctly found that the fact that they did not give performance evaluations didn't then give her a right to continued employment. These are really two separate independent clauses in the personnel rules, and that although she did not get the evaluations, it did not preclude the State from firing her for any reason or no reason. We really think that there are three main issues in this appeal. What we've talked about already is the fact that because Ms. Barron was a probationary employee at the time of her termination, her employment was at will. Therefore, all of the claims arising out of that termination were properly dismissed. Second, Ms. Barron raised claims for false light defamation and liberty interest claims. Those claims were also properly dismissed because she did not allege that the historical society said anything defamatory towards her. And the case law is very clear that unless there is a publication of some sort of defamatory conduct, these claims do not exist. Finally, Ms. Barron did not present any evidence that she was treated any And so the district court properly granted summary judgment on those claims. Although it was not addressed in the opening argument here, Ms. Barron claims that she was treated differently because a male employee had been paid a few thousand dollars more than her. And what we had pointed out in our briefs and pointed out to the district court below was that Mr. Foster had been an employee of 28 years with the historical society. He was paid on the state pay scale, where as many government employees are, you are rewarded for your longevity. There was simply no evidence to show that she was treated any differently because of her gender. It could have been Mrs. Faust in that position working for 28 years, and she would have made that same amount of money. I know I have time remaining, but if there are no questions, I think the issues have been fully briefed, and we would ask you to affirm the decisions of the district court. We compliment you on the wisdom of your decision. Your Honor. We'll now hear from Ms. McCracken for the remainder of her time. I think the State just conceded that there was a contract. Contracts of employment do not have to be for a specific term. There are other provisions to a contract, and the State admitted that it had a contract under the Arizona Administrative Code to give my client two evaluations and to do a report before they terminated her. Ms. McCracken, maybe you heard something different than I did, but what I understood the State to say was that on the issue of the evaluation, even if Ms. McCracken had been given glowing evaluations, the fact is that there was a condition subsequent contained in this document that Ms. Barron signed that allowed her to be terminated for any reason or no reason at all. So even if there is a contract, there is, in fact, a built-in condition subsequent that allowed the State to terminate her. Would you agree that at most, if the contract is breached by failure to have these evaluations, that would go to her right to have an evaluation, not to her right to be terminated? Yes. Her ability to be terminated. But the State has said that there is no contract, not even a contract. I don't – well, let me put it this way. I understand the State to be saying that there is by definition a contract in the sense that she was employed for some period of time, but what the contract says is that it's a contract at will that in this case can be terminated for any cause or no cause at all. That's a contract. It's just an ability to terminate the contract. Isn't that correct? No. Okay. Tell me why not. The understanding – the State's position renders the Employment Protection Act 3D and 2, the last sentence, completely void and meaningless. It renders all of its own administrative code provisions completely void and meaningless. Why? Why? Because at will is something that's found in the Employment Protection Act about private employees. Then preserved to public employees are all of the rights in law that they had prior to the Employment Protection Act. Right. Provided that there's a right to continued employment. No. That's what the – Okay. But that's what the regulation says. That's a question of fact that has to be decided. No. It's actually a question of law as well. Yes. And in this particular case, the question is it not, is whether or not the State had the right, based upon the facts laid out in the complaint and the response, to terminate your client for any reason or no reason at all. Well, and whether the State can be forced to live up to the provisions of its contract by specific performance during the term of that contract. Okay. And if that's – No one would argue – In that case, let's just say hypothetically that you filed an action for specific performance that gave Ms. Barron two opportunities to be evaluated. Would the State still have the right to terminate the contract within the six-month period for no reason or any reason? I think that the State has to prove that they don't need her services and that that's what the law says. Where does that come from? That comes from the administrative code, and the code sections are cited in my brief, and that's what it says. It says probationary employees can be dismissed, is the bottom line, if an agency head decides that their services are no longer needed. Also about the Equal Pay Act, Mr. Faust was paid more when he arrived, when Ms. Barron arrived, but Mr. Faust was also given a project manager position, which was against, and we've briefed this thoroughly, against the Arizona Administrative Code, and he was being paid $9,000 or more a year than Ms. Barron. But in this particular case, as I understand it, he'd been employed for 28 years. That explains his pay scale. In addition, the new manager had seen his work on some other place, I've forgotten where it was, that she really liked and so decided he would be a better team member, in quotes. Very respectfully, Your Honor, you have your facts wrong. Okay. Ms. Woosley had never met Mr. Faust before she gave him the position. Did she see his resume? No. His resume was created for this litigation before his deposition, and he had never had one previously. So she didn't know him. She hadn't met him. She met him for 10 minutes, gave him a $6,000 raise against all of the administrative codes of the state of Arizona, and she admits that the only information she ever had about Ms. Barron is information that shouldn't come in because it was all inadmissible hearsay. He said, he said, he said. And it was speculation by him. Thank you. We appreciate your presentations to both of you. Thank you for coming all the way from Arizona. Hope you have a nice day in San Francisco. And the court, this case that we've just heard, Barron v. The State of Arizona, is submitted, and the court is adjourned, or we are adjourned.
judges: Thompson, Smith, Hayes